UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
DONALD P. ROSENDALE,

                                            Plaintiff,

          - against -                                          07-CV-8149 (CS)

NANCY BRUSIE, as Amenia, N.Y. Zoning Code          **ORDER ADOPTING REPORT**
Enforcement Officer, DONALD SMITH, individually and      **AND RECOMMENDATION**
as former Amenia, N.Y. Zoning Code Enforcement
Officer and TOWN OF AMENIA, New York,

                                            Defendants.
--------------------------------------------------------------------x

<u>Appearances</u>:
Donald P. Rosendale
Amenia, New York
Pro Se *Plaintiff*

Terry A. Rice, Esq.
Rice & Amon
Suffern, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

          Before the Court is Magistrate Judge George A. Yanthis' Report and Recommendation

(Doc. 30) ("Report") concluding that Defendants' Motion to Dismiss (Doc. 19) should be

granted in its entirety.

**I. Background**

          On September 18, 2007, Plaintiff Donald Rosendale commenced this action, which was

referred by the Honorable Charles L. Brieant to Magistrate Judge Yanthis for all purposes on

September 27, 2007.[1]  On November 16, 2007, Plaintiff filed a First Amended Complaint

("Complaint") (Doc. 18), asserting several causes of action pursuant to 42 U.S.C. § 1983 and

New York State law:  (1) First Amendment retaliation, (2) violation of his Fifth and Fourteenth

Amendment due process rights, (3) violation of his Fourteenth Amendment equal protection

rights, and (4) violations of various provisions of New York law.  Defendants moved to dismiss

the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 13, 2007.

(Doc. 19.)  Magistrate Judge Yanthis issued a Report and Recommendation on January 9, 2009,

recommending that the Motion to Dismiss be granted.  (Doc. 30.)  Plaintiff filed objections to the

Report on January 21, 2009 (Doc. 32), and Defendants filed a reply to those objections on

February 4, 2009 (Doc. 34).  Plaintiff filed a Memorandum in response to that reply on February

9, 2009.[2]  (Doc. 35.)

        This is the third case filed by Plaintiff against the Town of Amenia and its Zoning Code

Enforcement Officers.  In the first case, *Rosendale v. Iuliano*, 99-CV-11701 (DLC) ("*Iuliano*"),

Plaintiff alleged that defendants, including Amenia and the Town Zoning Code Enforcement

Officer, violated his substantive and procedural due process rights by issuing a special use

permit to Tamarack Preserve Ltd. ("Tamarack"), a rod and gun club adjacent to Plaintiff's farm

and home, and failing to enforce it.  Summary judgment was granted in favor of the defendants

because Plaintiff failed to establish a valid property interest in Amenia's land use regulation and

---

        [1] Judge Brieant passed away on June 20, 2008.  The case was reassigned to me on
August 5, 2008.  (Doc. 29.)

        [2] Plaintiff filed this Memorandum well past the deadline for objections and did not seek
permission of the Court to do so, but the Court nevertheless has considered it in reviewing the
Report.

enforcement, which under state law is a discretionary function.  The Second Circuit affirmed the decision.  *Rosendale v. Iuliano*, 63 Fed. App'x 52 (2d Cir. 2003).

        In the second action, *Rosendale v. LeJeune*, 03-CV-6181 (CLB) ("*LeJeune*"), Plaintiff alleged, among other things, that the defendants, including Amenia and its Zoning Code Enforcement Officer, retaliated against him in violation of the First Amendment for speaking out regarding the defendants' failure to enforce land use regulations against Tamarack, a Nextel cell phone antenna adjoining his property, an allegedly illegal auto body repair shop, and a restaurant at an adjoining golf club.  Judge Brieant entered summary judgment in favor of the defendants because the law of the case under *Iuliano* was that Plaintiff failed to establish that he had a protected property right in the enforcement of Amenia zoning laws.  *Rosendale v. LeJeune*, 420 F. Supp. 2d 315, 322 (S.D.N.Y. 2006).  In addition, the court found there was insufficient evidence of retaliation to permit a reasonable factfinder to conclude that Plaintiff's constitutionally protected conduct motivated the defendants' actions or omissions with respect to the enforcement of land use regulations against the specified entities.  *Id.* at 324.  The Second Circuit affirmed that decision as to the claims based on incidents occurring before February 13, 2002, the date of the third amended complaint in *Iuliano*, because they were barred by *res judicata*.  *Rosendale v. LeJeune*, 233 Fed. App'x 51 (2d Cir. 2007).  The Second Circuit vacated the decision, however, with respect to Plaintiff's First Amendment retaliation claims based on events occurring after February 13, 2002, stating that "there may be sufficient evidence to support" them.  *Id.* at 52.  But the Court of Appeals also held that such claims should be dismissed because they were not ripe for review, as Plaintiff had not exhausted his

administrative remedies.  *Id.*  The Court adopts the remainder of the facts and procedural history of this case as set forth in the Report.

## II. Discussion

### A. Standard for Reviewing a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Parties may raise objections to the magistrate judge's report and recommendation, but they must be "specific[,] written," and submitted "[w]ithin 10 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *accord* 28 U.S.C. § 636(b)(1)(C).

Insofar as a report and recommendation deals with a dispositive motion, a district court must conduct a *de novo* review of those portions of the report or specified proposed findings or recommendations to which timely objections are made.  28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").  The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008); *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985); Fed. R. Civ. P. 72 advisory committee's note (b).

The objections of parties appearing *pro se* are "generally accorded leniency" and should be construed "to raise the strongest arguments that they suggest."  *Milano v. Astrue*, No. 05-CV-6527, 2008 U.S. Dist. LEXIS 74488, at *3-4 (S.D.N.Y. Sept. 26, 2008) (internal quotation marks

omitted).[3]  "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."  *Pinkney v. Progressive Home Health Servs.*, No. 06-CV-5023, 2008 U.S. Dist. LEXIS 55034, at *2-3 (S.D.N.Y. July 21, 2008) (internal quotations marks omitted).

### B. Standard for Motion to Dismiss

#### 1. Plaintiff's Objections

In evaluating the legal sufficiency of Plaintiff's Complaint, Magistrate Judge Yanthis applied the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face." (Report 9.)   In addition, he explained that less stringent standards should be applied to *pro se* plaintiffs and that their complaints should be interpreted to raise the strongest arguments they suggest.  (*Id.* (quoting *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).)  Magistrate Judge Yanthis also acknowledged, however, that *pro se* plaintiffs are not exempt from the rules of procedural and substantive law.  (*Id.* 9-10.)

Plaintiff objects to Magistrate Judge Yanthis' application of the *Twombly* standard in reviewing the legal sufficiency of his Complaint because he is a non-lawyer *pro se* plaintiff.  He argues that Magistrate Judge Yanthis overlooked *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), which, according to Plaintiff, holds that the "heightened" pleading standard set forth in *Twombly* does not apply to complaints drafted by non-lawyers.  (Objections 9.)

---

[3]  Copies of unreported decisions cited in this opinion will be provided to Plaintiff.

Contrary to Plaintiff's assertions, *Erickson* did not hold that the pleading standard set forth in *Twombly* is inapplicable to *pro se* complaints drafted by non-lawyers.  Rather, the *Erickson* Court, which cited *Twombly* in setting forth the proper pleading standard, found that the Tenth Circuit Court of Appeals had improperly departed from the liberal pleading standards of Federal Rule of Civil Procedure 8(a)(2), and that its departure was "even more pronounced" because the plaintiff was *pro se*.  *Erickson*, 127 S. Ct. at 2200.  Moreover, the *Twombly* standard is not a "standard of heightened fact pleading," but rather "a flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (emphasis in original) (internal quotation marks omitted) (applying *Twombly* standard to *pro se* complaint and finding no amplification necessary to render claim plausible).

In evaluating the legal sufficiency of *pro se* complaints, the Second Circuit has applied the *Twombly* standard while being mindful of the "duty," emphasized in *Erickson*, "to construe more liberally" *pro se* complaints.  *Id.* at 214 (vacating judgment that claim was insufficiently pleaded because complaint presented plausible claim and satisfied Rule 8(a) by giving defendant notice of claim and grounds on which it rested); *accord Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-CV-5416, 2008 U.S. App. LEXIS 23977, at *2 (2d Cir. Nov. 20, 2008) ("Like any other complaint, a *pro se* complaint, to survive a motion to dismiss, must plead enough facts to state a claim to relief that is plausible on its face." (internal quotation marks and ellipses omitted)); *Fransua v. Vadlamudi*, No. 05-CV-1715, 2008 U.S. App. LEXIS 23236, at *2 (2d Cir. Nov. 3, 2008) (*pro se* plaintiff complaint properly dismissed because it did not contain enough facts to state claim to relief).  Accordingly, by applying the *Twombly* standard while being

mindful of the duty to construe *pro se* complaint liberally, Magistrate Judge Yanthis used the appropriate standard for reviewing the legal sufficiency of Plaintiff's complaint.

### 2.  Rule 12(b)(6) Standard

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson*, 127 S. Ct. at 2200 (quoting *Twombly*, 550 U.S. at 555).  When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the court "must accept as true all of the factual allegations contained in the complaint," *id.*, and must draw all inferences from those allegations in the plaintiff's favor, *Bisson*, 2008 U.S. App. LEXIS 23977, at *2.  "To survive a motion to dismiss, a complaint must contain 'only enough facts to state a claim to relief that is plausible on its face.'"  *Fransua*, 2008 U.S. App. LEXIS 23236, at *2 (quoting *Twombly*, 127 S. Ct. at 1974).  But a plaintiff must provide enough facts to "nudge[ his] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

Documents filed *pro se* are to be "liberally construed" and *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and as such, must be interpreted to "raise the strongest arguments that they suggest," *Bisson*, 2008 U.S. App. LEXIS 23977, at *3 (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).  "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

"Accordingly, the 'dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.'"  *Id.* (quoting *Boykin*, 521 F.3d at 216).

**C.  First Amendment Retaliation**

Plaintiff alleges that Defendants retaliated against him for cooperating with alleged state and federal investigations of Amenia officials accused of corruption, writing to and appearing before municipal boards, and bringing a number of state and federal lawsuits.  (Compl. ¶¶ 4, 43.) He claims that Defendants retaliated against him by refusing to enforce zoning ordinances, wrongfully taxing him, interfering with a contract of sale for a portion of his land, and threatening to cancel his senior citizen and agricultural tax exemptions.  (*Id.* ¶¶ 2, 5, 45, 52.) Plaintiff further contends that Defendants' retaliatory actions have chilled his speech, in that he allegedly dropped claims in a prior federal court proceeding, declined offers from political parties to run for office, and stopped speaking out at town meetings.  (*Id.* ¶ 5.)

**1.  Retaliation Based on Events Occurring Before February 13, 2002**

Magistrate Judge Yanthis recommended that Plaintiff's First Amendment retaliation claims based on Defendants' failure to enforce Amenia's zoning regulations against Tamarack and the allegedly illegal automotive body shop before February 13, 2002, be dismissed pursuant to the doctrine of *res judicata*.  He reasoned that Plaintiff had already litigated those claims in *LeJeune*; their dismissal was affirmed by the Second Circuit; and Plaintiff does not allege that Defendants took any relevant actions with respect to Tamarack or the auto body shop after February 13, 2002.  (Report 12-14.)

Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action." *Wiesner v. Nardelli*, No. 07-CV-0718, 2008 U.S. App. LEXIS

25332, at *4 (2d Cir. Dec. 16, 2008).  "Res judicata applies when '1) the previous action

involved an adjudication on the merits; 2) the previous action involved the same parties or those

in privity with them; and 3) the claims asserted in the subsequent action were, or could have

been, raised in the prior action.'" *Beras v. Carvlin*, No. 07-CV-2514, 2008 U.S. App. LEXIS

19805, *3-4 (2d Cir. Sept. 16, 2008) (quoting *Monahan v. New York City Dep't of Corrections*,

214 F.3d 275, 285 (2d Cir. 2000)).  Claims "concerning the transaction, or series of connected

transactions, out of which the first action arose" are barred because they "could have been raised

in a prior action." *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205 (2d Cir. 2002).  Thus,

"'[e]ven claims based upon different legal theories are barred provided they arise from the same

transaction or occurrence.'" *Id.* (quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d

85, 87-88 (2d Cir. 1999).

It is not clear whether Plaintiff objects to this portion of the Report, but reviewing it *de*

*novo* in an excess of caution, I find that Plaintiff's First Amendment retaliation claims based on

Defendants' failure to enforce Amenia zoning regulations before February 13, 2002, must be

dismissed under the doctrine of *res judicata* because (1) there was an adjudication on the merits

in *LeJeune*; (2) *LeJeune* involved the same parties or their privies – Amenia and its Zoning Code

Enforcement Officer;[4] and (3) Plaintiff asserted the same First Amendment retaliation claims in

---

[4]  In *LeJeune*, Plaintiff named as Defendants the Town of Amenia; LeJeune, Town
Supervisor; and Smith, Zoning Code Enforcement Officer from November 1, 2001 through
March 2004.  *LeJeune*, 420 F. Supp. 2d at 318.  In the instant action, Plaintiff again names Smith
and Amenia as Defendants, but also adds Brusie.  Although Brusie was not a defendant in the
prior action, she is in privity with them.  "It is well settled in this circuit that literal privity is not
a requirement for *res judicata* to apply."  *Monahan*, 214 F.3d at 285.  Rather, "the requisite
privity must be found in the substantial identity of the incentives of the earlier party with those

*LeJeune*, which were based on Defendants' alleged refusal to enforce land use regulations against Tamarack, Nextel, a restaurant on a nearby golf course, and the allegedly illegal auto body shop.  Moreover, the Second Circuit in *LeJeune* affirmed that those claims were precluded, 233 Fed. App'x at 52, because they arose from the same core of operative facts as alleged in *Iuliano*.  *LeJeune*, 420 F. Supp. 2d at 319.

### 2.  Retaliation Based on Events Occurring After February 13, 2002

#### a.  Plaintiff's Objections

Magistrate Judge Yanthis found that Plaintiff's First Amendment retaliation claims based on events occurring after February 13, 2002 – specifically, Defendants' allegedly retaliatory failure to enforce land use regulation with respect to the Nextel cell phone antenna, inaccurate computation of his 2002 through 2004 tax assessments, threats to cancel his senior citizen and agricultural tax exemptions, and interference with the sale of five acres of his property – were not barred by *res judicata*.  He recommended that they be dismissed, however, because (1) Plaintiff offers nothing more than conclusory allegations of retaliation; (2) does not allege Defendants' personal involvement in many of the complained-of actions; and (3) in some instances, also fails to plead actual chilling.  (Report 14-17.)  Plaintiff objects to this portion of

---

of the party against whom *res judicata* is asserted."  *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995).  Smith, in defending against the claims brought against him in *LeJeune*, undoubtably had the same incentives as Brusie does in the instant action, because both were and are sued in their capacities as Zoning Code Enforcement Officers.  As such, Smith adequately represented Brusie's interest in *LeJeune*.  *See Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 329 (S.D.N.Y. 2008) (defendants in subsequent suit were in privity with defendants in prior suit where they shared common interests and those interests were represented in prior suit).

the Report because, he argues, the Second Circuit already decided in *LeJeune* that he had adequately pleaded First Amendment retaliation.  (Objections 7-8.)

Contrary to Plaintiff's assertions, however, the Second Circuit held that Plaintiff's First Amendment retaliation claims based on events occurring after February 13, 2002, were "not yet ripe for review" because he had "not exhausted his state remedies."  *LeJeune*, 233 Fed. App'x at 52.  Although the Court also noted that "there *may* be sufficient evidence to support Rosendale's First Amendment retaliation claim to the extent it is based on incidents occurring after February 13, 2002," it did not actually review or decide the issue because the claims were not ripe for adjudication.  *Id.* (emphasis added).  Because "[r]ipeness is a jurisdictional inquiry," *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005), the court did not have the authority to reach the issue, and thus, Plaintiff's contention that the Second Circuit already decided it is without merit.

Plaintiff also objects to the Report on the ground that *res judicata* does not bar his First Amendment retaliation claims, but rather bars any argument by Defendants that his claims are precluded by earlier decisions in *Iuliano* and/or *LeJeune*.  (Objections 2-6.)  Plaintiff cites *Fine v. Bellefonte Underwriting*, 758 F. 2d 50 (2d Cir. 1985), in support of his contention that because Defendants made in *LeJeune* the argument that his claims were barred by *res judicata*, and the argument was rejected by both the District Court and the Second Circuit, Defendants are precluded by *res judicata* from advancing it again in this action.  (Objections 2-6.)

Plaintiff's reliance on *Fine* is, however, unavailing.  In *Fine*, the Court of Appeals declined to review and reverse the determination of a previous panel of the court, and in doing so, noted that the argument before it had been before the original panel and that the original

-11-

panel "must be presumed to have consider it."  758 F.2d at 53-54.  *Fine* is inapposite here and does not preclude the arguments advanced by Defendants because Defendants are not seeking review of a prior determination of the Second Circuit.  Rather, Defendants argue that this Court must adhere to the Second Circuit's ruling in *LeJeune* that "*res judicata* bars the claims based on incidents occurring before February 13, 2002."  *LeJeune*, 233 F. App'x at 52.

In his Objections, Plaintiff also contends that he alleges specific facts sufficient to support his First Amendment retaliation claims against Defendants Smith and Brusie.  Plaintiff notes that he alleges in the Complaint at least one specific instance in which Smith refused to address Plaintiff's complaints about Tamarack because of his First Amendment-protected activity, including "st[i]ck[ing] his nose 'into too many places where it didn't belong.'" (Objections 12-13 (quoting Compl. ¶ 38).)  In addition, Plaintiff points to the specific allegation that Brusie, in a conversation with the auto body shop owner and others, stated that she had not acted and would not act on any of Plaintiff's complaints because Plaintiff is a "troublemaker," who "caused trouble for the people who work here."  (*Id.* 14; Compl. ¶ 33.)  He argues that each of these allegations are sufficient because multiple examples of First Amendment retaliation are not necessary to state a claim.  (Objections 13.)

Plaintiff also objects to Magistrate Judge Yanthis' inference that Brusie did not know about the prior lawsuits and complaints.  Plaintiff argues that the inference that Brusie was aware of the prior lawsuits and complaint is equally plausible.  (*Id.* 15.)  Drawing such an adverse inference, Plaintiff argues, contravenes the requirement that courts draw all inferences in favor of the plaintiff on a motion to dismiss.  (*Id.*)  In light of these objections, I review *de novo*

-12-

Plaintiff's First Amendment retaliation claims brought pursuant to Section 1983[5] and based on events that occurred after February 13, 2002.

### b. Ripeness

Before considering whether Plaintiff has sufficiently alleged First Amendment retaliation claims, I must first consider whether such claims are ripe for adjudication. *See Murphy*, 402 F.3d at 347 ("Ripeness is a jurisdictional inquiry."). Defendants argue that Plaintiff's land use-related claims are not ripe for adjudication pursuant to *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985), because the governmental entity responsible for enforcing the regulations has not "reached a final decision regarding the application of the regulations to the property at issue." (Defs. Mem. of Law in Supp. of Mot. to Dismiss 1 (quoting *Williamson*, 473 U.S. at 186).) In *Williamson*, the Supreme Court, in the context of a Fifth Amendment takings claim, held that in order for a claim to be ripe, the plaintiff must obtain a final administrative decision regarding the land use issue on which the claim is based. *Williamson*, 473 U.S. at 186. "The purpose of the ripeness requirement is to ensure that a

---

5   Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. To state claim for relief in an action pursuant to Section 1983, a plaintiff must establish (1) the deprivation of a right secured by Constitution or laws of United States, and (2) that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Plaintiff alleges that Smith and Brusie wrongfully refused to enforce Amenia's land use regulations while acting in their official capacities. As such, he has adequately alleged that the purported deprivation was committed under color of state law. *See Brescia v. Sia*, No. 07-CV-8054, 2008 U.S. Dist. LEXIS 35661, at *6 (S.D.N.Y. Apr. 30, 2008) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988))).

dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution" and to "prevent[] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).

Courts have expanded application of this ripeness doctrine to a number of constitutional claims, including First Amendment retaliation claims. *Murphy*, 402 F.3d at 350 ("[I]n certain circumstances a First Amendment claim emanating from a land use dispute may be subject to the *Williamson County* prong-one ripeness test."). The Second Circuit has advised, however, that the ripeness test should be applied "cautiously" to First Amendment claims. *Id.* at 350-51; *accord Dougherty*, 282 F.3d at 90 ("[I]n the First Amendment context, the ripeness doctrine is somewhat relaxed."). To determine whether the ripeness test should be applied to claims involving land use challenges, courts consider two factors: (1) whether the plaintiff experienced an immediate injury as a result of the defendant's actions, and (2) whether requiring the plaintiff to pursue additional administrative remedies would further define his or her alleged injuries. *See Murphy*, 402 F.3d at 351.

The Second Circuit in *LeJeune* required Plaintiff to exhaust his administrative remedies, finding that he suffered no immediate harm and that additional administrative proceedings would further define his injuries. *LeJeune*, 233 Fed. App'x 51. It does not appear, however, that Plaintiff followed this direction. The Second Circuit referred specifically to a possible appeal to the Zoning Board of Appeals ("ZBA"), which under New York Town Law Section 267-b may "reverse or . . . modify" a "decision, interpretation or determination" of "the administrative

-14-

official charged with enforcement" of zoning and planning rules and regulations.  While Plaintiff

wrote the relevant official – Brusie – on August 9, 2007, reiterating his various complaints, he

never pursued any action before the ZBA.  Nor does Plaintiff appear to have made efforts under

New York Town Law Section 268(2), which permits any three citizens to enforce zoning laws

where town officers have failed to do so.  While such actions might have been time-barred with

respect to the issues raised in *LeJeune*, Plaintiff has provided no good reason for his failure to

pursue them with respect to Brusie's determination not to act in response to his August 9, 2007

letter.  Thus, it appears that the Court of Appeals would still regard Plaintiff's claims as unripe.

In light of my ultimate view on the merits, however, I will assume ripeness for the sake

of argument, given that:  (1) Plaintiff has alleged immediate injuries as a result of Defendants'

purported failure to enforce land use regulations – specifically, hearing loss as a result of noise

coming from Tamarack, deteriorating health as a result of exposure to "dangerous" fumes and

"air and water pollution" from the auto body shop, and reduction in the value of his property as a

result of the improper placement of the cell phone tower (Compl. ¶¶ 6, 35-36, 51; Aug. 9, 2007

Letter Attached to Compl.); and (2) requiring Plaintiff to pursue additional administrative

remedies seems unlikely to further define his alleged injuries in a manner that would make a

difference to the outcome of this case.  *See Dougherty*, 282 F.3d at 90 (ripeness test inapplicable

to First Amendment retaliation claim where plaintiff suffered immediate injury from revocation

of building permit and pursuit of additional administrative decisions would not further define his

injury); *Patriots Way, LLC v. Marconi*, No. 06-CV-874, 2007 U.S. Dist. LEXIS 24214, at *11-

12 (D. Conn. Mar. 30, 2007) (ripeness test inapplicable to First Amendment retaliation claim

where plaintiff alleged he suffered immediate economic injury resulting from defendants'
actions).

### c. Sufficiency of the Allegations

I now turn to the issue of whether, pursuant to Rule 12(b)(6), Plaintiff has adequately
alleged First Amendment claims based on events occurring after February 13, 2002.  The
elements of a First Amendment retaliation claim are dependent on the "factual context" of the
case.  *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008).  In the context of a
private citizen's action against public officials, the plaintiff must show that: "(1) [plaintiff] has
an interest protected by the First Amendment; (2) defendants' actions were motivated or
substantially caused by [plaintiff's] exercise of that right; and (3) defendants' actions effectively
chilled the exercise of [plaintiff's] First Amendment right."  *Curley v. Village of Suffern*, 268
F.3d 65, 73 (2d Cir. 2001).  Such claims require a court to "conduct an inquiry into whether
plaintiff's speech was actually chilled by the retaliatory conduct."  *Saleh v. City of New York*,
No. 06-CV-1007, 2007 U.S. Dist. LEXIS 92193, at *9 (S.D.N.Y. Dec. 17, 2007).  Actual
chilling must be established by "a change in behavior" because "a subjective chill cannot serve
as a substitute for a specific objective harm."  *Aretakis v. Durivage*, No. 07-CV-1273, 2009 U.S.
Dist. LEXIS 7781, at *77 (N.D.N.Y Feb. 3, 2009) (citing *Laird v. Tatum*, 408 U.S. 1, 13-14
(1972)); *accord Curley*, 286 F.3d at 73.

### i. Interest Protected by the First Amendment

Plaintiff has adequately alleged that he engaged in First Amendment-protected activity.
He asserts that he cooperated with the New York State and Federal officials in their investigation
of corruption charges against Amenia officials; wrote to, appeared before and met with

municipal boards and town officers; brought state and federal actions; and gave newspaper interviews in which he was critical of Amenia.  (Compl. ¶¶ 4, 43.)  Such conduct is protected by the First Amendment.  *See Dougherty,* 282 F.3d at 91 ("The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment."); *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988) (plaintiff's participation in state investigation was protected by First Amendment); *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 25 (2d Cir. 1979) (interview with reporter, which resulted in newspaper article, was First Amendment-protected speech).

### ii. **Causation**

#### (a) **Tamarack**

With respect to his First Amendment retaliation claim based on Defendants' refusal to enforce land use regulations against Tamarack, Plaintiff alleges the following facts:  (1) Plaintiff confronted Smith regarding his refusal to address Plaintiff's complaints about Tamarack, and Smith responded that "he would not act on [P]laintiff's complaints because he had 'stuck his nose into too many places where it did not belong,' and that [Plaintiff] was 'unpopular' with members of the town administration, that his First Amendment exercise had caused 'good people to lose their jobs,' and his refusal to act on complaints about the gun club was in retaliation for such actions" (Compl. ¶ 38);[6] and (2) Plaintiff sent a letter to Brusie on August 9, 2007, asking her to enforce a special use permit against Tamarack (*id.* ¶ 23).

---

[6] Although the Complaint is unclear about when this alleged conversation took place, I will assume for purposes of this motion that it took place after February 13, 2002 (*see* Compl. ¶¶ 37-38), as Plaintiff alleged in *LeJeune* that it occurred in August 2003.  *See LeJeune*, 420 F. Supp. 2d at 324.

Plaintiff has adequately pleaded causation with respect to this claim because the statements allegedly made by Smith, assuming they are true, are "'sufficient to support the inference that [Plaintiff's] speech played a substantial part in'" Defendants' refusal to enforce the land use laws against Tamarack. *Kempkes v. Downey*, No. 07-CV-1298, 2008 U.S. Dist. LEXIS 25981, at *9-10 (S.D.N.Y. Mar. 31, 2008) (quoting *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)); *see El-Bey v. City of New York*, 419 F. Supp. 2d 546, 552 (S.D.N.Y. 2006).

### (b) Nextel

With respect to Plaintiff's First Amendment retaliation claim based on Defendants' refusal to enforce land use regulations against Nextel, Plaintiff alleges the following facts occurred after February 13, 2002:  (1) Nextel applied for and was given a building permit on June 24, 2003, after its special use permit and variance had expired (Compl. ¶ 29), and (2) Plaintiff sent a letter to Brusie on August 9, 2007, asking her to enforce a special use permit against Nextel (*id.* ¶ 23).

Plaintiff fails to plead facts sufficient to render this claim plausible because he makes only vague and conclusory allegations in support of his contention that Defendants failed to enforce land use regulations against Nextel because of his protected speech.  (*See* Compl. ¶¶ 2, 4, 45.)  For example, Plaintiff alleges that "in its campaign to retaliate against him because of his exercise of First Amendment rights, the town and the defendants have taken a purposeful, aggravated and persistent course of conspiratorial . . . non-enforcement of pertinent municipal zoning regulations . . . ."  (*Id.* ¶ 4.)  Such conclusory allegations without supporting facts, such as which Defendant, if any, was responsible for issuing the permit to Nextel, will not support a First Amendment retaliation claim.  *See Brown v. Nelson*, No. 05-CV-4498, 2008 U.S. Dist. LEXIS

101118, at *11 (S.D.N.Y. Jan. 25, 2008) ("Plaintiff may not rely on conclusory allegations suggesting causation."); *Geiger v. Town of Greece*, No. 07-CV-6066, 2007 U.S. Dist. LEXIS 87466, at *26 (W.D.N.Y. Sept. 4, 2007) (causation not adequately pled by "purely conclusory" allegations).

### (c) Auto Body Shop

With respect to his First Amendment retaliation claim based on Defendants' refusal to enforce land use regulations against the purportedly illegal auto body shop, Plaintiff alleges the following occurred after February 13, 2002:  (1) in December 2006, Brusie told the tenant occupying the property on which the auto body shop was being operated and others that "she had not acted on any of the complaints of [Plaintiff] because '[he] is nothing but a troublemaker,' who is 'always making trouble for the people who work here' nor would she act if he brought future claims" (Compl. ¶¶ 32-33); and (2) Brusie forced the auto body shop to close in 2006 only after another citizen complained of its operation (*Id.* ¶ 34).  Causation can be inferred from these allegations, which I must assume to be true, because they raise an inference that "[Plaintiff's] speech played a substantial part in" Defendants' refusal to enforce Amenia's land use laws against Nextel.  *Kempkes*, 2008 U.S. Dist. LEXIS 25981, at *9-10.

### (d) Inaccurate Assessment of Taxes

Plaintiff alleges that his taxes were inaccurately assessed in retaliation for his First Amendment protected activities, and that "town employees" or "town officials" constantly threatened to cancel his senior citizen and agricultural tax exemptions, which chilled his speech.

(Compl. ¶¶ 2-5.)  Sometime after February 13, 2002,[7] Plaintiff brought an action in state court asserting that his county and school property taxes were inaccurately assessed.  (*Id.* ¶ 30.)  The action was ultimately dismissed in October 2004, because Plaintiff had failed to exhaust his administrative remedies.  (*Id.*)  Also in 2004, Plaintiff applied for a correction of his real property taxes.  Thereafter, the Dutchess County Office of Real Property Services ordered refunds of his 2002, 2003 and 2004 taxes because agricultural exemptions had been wrongly calculated, but declined to recalculate his senior citizen low income exemption.  (*Id.*)

These allegations are insufficient to render plausible his claim that he was improperly taxed because of his First Amendment protected speech.  The Complaint does not include any facts regarding the identity of those responsible for improperly taxing Plaintiff, or whether they have any relationship with Defendants, or whether they were even aware of his protected speech.  Nor does the Complaint contain allegations regarding the identity of the "town officials" who were responsible for the "constant threats . . . to deprive him further of his senior citizen and agricultural tax exemption entitlements . . . ."  (*Id.* ¶ 5.)  The Complaint also fails to provide facts regarding even one incident in which Plaintiff was threatened with the cancellation of his tax exemptions.  As such, the Complaint fails to make the necessary connection between Defendants, the inaccurate tax assessments, and Plaintiff's protected speech.

### (e) Interference with the Sale of Plaintiff's Land

Plaintiff alleges that in the fall of 2005, he agreed to sell his neighbor five acres of his land, but that the sale was never completed because an unidentified individual approached the

---

[7]  The date on which this state court action was brought is unclear because the Complaint alleges that it was brought in 2005, but that it was dismissed in October 2004.  (*Id.* ¶ 30.)

neighbor and informed him that he should wait to purchase the land because he might get a better price after Plaintiff's lawsuit against Amenia was dismissed.  (Compl. ¶¶ 39-42.)  Apparently, this unidentified individual believed that Plaintiff would lose the lawsuit and, as a result, owe Amenia such a large sum of money that Amenia would eventually own Plaintiff's home.  (*See id.*)  Plaintiff fails to plead causation with respect to this claim because he has not identified the individual who allegedly convinced his neighbor to wait to purchase his property, and has not therefore raised an inference that Defendants did so in retaliation for his protected speech.

In sum, I find that the Complaint adequately alleges causation – in order words, that Defendants' actions or failures to act were attributable to Plaintiff's protected speech – as to the failure to enforce land use regulations against Tamarack and as to the failure to do the same against the auto body shop, but not as to the Nextel tower, the assessment of Plaintiff's taxes or the land sale.

### iii.  Chilling of Speech

Plaintiff alleges in the Complaint that he exercised his First Amendment rights in various ways "[u]ntil he was intimidated by the defendants' constant threats of retribution."  (Compl. ¶ 43.)  Specifically, he alleges that "the constant threats by town officials to deprive him further of his senior citizen and agricultural tax exemptions entitlements, have had a chilling effect on the exercise of his First Amendment rights," in that he dropped a federal lawsuit, declined offers "from major political parties to run for town office, and stopped speaking out at town meetings."  (*Id.* ¶ 5.)  There are two problems with these allegations.  First, they attribute the chilling only to the tax threats, as to which the element of causation is wanting.  There are no allegations that the inaction arguably motived by Plaintiff's speech – the failure to enforce the zoning laws against

Tamarack and the auto body shop – chilled any speech.  Second, the Complaint and the record make clear that Plaintiff in fact continued to speak out about Defendants' failure to enforce zoning regulations and properly assess his taxes.  Specifically, in 2004, Plaintiff brought a state court action against Amenia and its tax assessor and thereafter applied for and received a refund of some of his taxes from the Dutchess County Office of Real Property Services.  (*Id.* ¶ 30.)

In August 2003, Plaintiff brought the *LeJeune* action based on Defendants' failure to enforce land use regulations against Tamarack, Nextel and the auto body shop.  (*Id.* ¶ 10.) Thereafter, he appealed to the Court of Appeals the district court's decision in *LeJeune*.  (*Id.* ¶ 11.)  Also in 2003, he confronted Smith regarding his failure to enforce land use regulations against Tamarack.  (*Id.* ¶ 38.)  Plaintiff wrote a letter to the Town Supervisor asking him to act on complaints about Tamarack.  (*Id.* ¶ 37.)  In 2007, he sent a letter to Brusie demanding she enforce land use regulations against Nextel and Tamarack.  (*Id.* ¶ 23, 28; August 9, 2007 Letter Attached to Compl.)  And, obviously, he brought the instant action in 2007, and has prosecuted it vigorously.  Because the Complaint shows that Plaintiff continued to exercise his First Amendment rights despite Defendants' alleged retaliatory conduct, Plaintiff fails to allege actual chilling of his speech.  *See Williams*, 535 F.3d at 78 (plaintiff was not chilled where he continued to speak despite alleged retaliatory conduct); *Curley*, 268 F.3d at 73 ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); *Sloup v. Loeffler*, No. 05-CV-1766, 2008 U.S. Dist. LEXIS 65545 (E.D.N.Y. Aug. 21, 2008) (actual chilling not established where plaintiff continued to speak).  Against this backdrop, where Plaintiff's readiness to speak out was "unimpaired by [Defendants'] allegedly punitive conduct," *Williams*, 535 F.3d at 78, the claim of actual chilling does not suffice.  *See*

*Mangano v. Cambariere*, No. 04-CV-4980, 2007 U.S. Dist. LEXIS 72595, at *7-8 (S.D.N.Y.

Sept. 27, 2007) (no actual chilling where plaintiff did not provide "one example of a situation in

which she desired to exercise her First Amendment rights but was chilled by defendants' alleged

actions"); *Balaber-Strauss v. Town/Vill. of Harrison*, 405 F. Supp. 2d 427, 434 (S.D.N.Y. 2005)

(continuing to pursue civil rights action and filing of bankruptcy action were evidence that

speech was not chilled); *Jones v. Maples*, No. 98 Civ. 7132, 2002 U.S. Dist. LEXIS 3175, at *26

(S.D.N.Y. Feb. 26, 2002) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir.

1992)) (complaint "which alleges only conclusory and speculative chilling of First Amendment

rights should be dismissed").  Because Plaintiff's speech has not actually been chilled, and

because he only alleges chilling based on conduct as to which the allegations of causation are

lacking, he cannot make out a valid First Amendment retaliation claim.  I concur, therefore, with

Magistrate Judge Yanthis' conclusion that Plaintiff's First Amendment retaliation claim must be

dismissed.

### 2.  Conspiracy

Magistrate Judge Yanthis recommended that Defendants' Motion to Dismiss be granted

as to Plaintiff's Section 1985 conspiracy claim because Plaintiff does not allege any facts

sufficient to render plausible his claim that there was an agreement among Defendants to violate

his constitutional rights.  (Report 17-19.)  Plaintiff has not objected to this portion of the Report.

Accordingly, I have reviewed it for clear error, and finding none, I adopt it as the decision of the

Court.

### D.  Due Process

Magistrate Judge Yanthis recommended dismissal of Plaintiff's procedural and substantive due process claims because they were litigated in *Iuliano* and are thus barred by *res judicata*.[8]  (Report 19-21.)  Plaintiff has not objected to this portion of the Report.  After reviewing it for clear error and finding none, I adopt it as the decision of the Court.

### E.  Equal Protection

Magistrate Judge Yanthis recommended that Plaintiff's equal protection claims based on Defendants' alleged failure to enforce zoning regulations against Tamarack, the auto body shop, Nextel, and Defendants' wrongful  taxation of Plaintiff be dismissed because they are barred by *res judicata* as those claims were litigated in *Iuliano* and *LeJeune*.  (Report 21-23.)  Plaintiff does not object to this portion of the Report, and having reviewed it for clear error and finding none, I adopt it as the decision of the Court.

### F.  State Law Claims

#### 1.  Zoning Claim

Magistrate Judge Yanthis recommended that Plaintiff's substantive zoning claims be dismissed pursuant to the doctrine of *res judicata* because the court in *Iuliano* held that Plaintiff

---

[8]  In *Iuliano*, the Court held and the Second Circuit affirmed that Plaintiff failed to state both substantive and procedural due process claims because he did not have a constitutionally protected property interest in the enforcement of Amenia's land use regulations, which were discretionary.  *Iuliano*, 2002 U.S. Dist. LEXIS 2173, at *14-15, 21-22, *aff'd* 63 Fed. App'x at 52.  *Res judicata* bars Plaintiff's due process claims in this case, despite Plaintiff's allegations that Defendants' failure to enforce Amenia's land use regulations is continuing, because *Iuliano* involved an adjudication on the merits, the same parties, and essentially the same due process claims.  Moreover, even if *Iuliano* did not have *res judicata* effect, it is properly decided and thus its reasoning would bar a claim by any plaintiff that the discretionary failure to enforce land use regulations violated due process.

has no federal right to enforce zoning regulations.  (Report 23-24.)  Plaintiff does not object to this portion of the Report, and having reviewed it for clear error and finding none, I adopt it as the decision of the Court.

### 2.  Tax Claim

Magistrate Judge Yanthis similarly recommended dismissal of Plaintiff's tax claims because they are barred by *res judicata*.  (Report 24-25.)  Plaintiff brought a tax refund claim in *LeJeune*, which the court dismissed pursuant to the Tax Injunction Act, principles of comity, and state statute of limitations.  *LeJeune*, 420 F. Supp 2d at 319, 323.  Plaintiff objects to that portion of the Report on the basis that the Second Circuit decided in *LeJeune* that Plaintiff's tax claims were not precluded.  (Objections 8.)  The Second Circuit's opinion, however, does not even mention Plaintiff's tax claim, much less decide that it is not precluded.  Accordingly, I have reviewed this portion of the Report for clear error and, finding none, adopt it as the decision of this Court for the reasons set forth therein.  I would reach the same decision were I reviewing the matter *de novo*.

### 2.  Remaining State Law Claims

Having dismissed Plaintiff's federal causes of action, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See Costello v. Town of Warwick*, 273 F. App'x 118, 120 (2d Cir. 2008) (no abuse of discretion where, after dismissing federal claims, district court declined to exercise supplemental jurisdiction over state law claims).

### G.  Request for Leave to Amend

In his objections, Plaintiff contends that he has adequately pleaded a claim for First Amendment retaliation, but argues that if the Court finds that he has not, he should be given

leave to re-plead it.  (Objections 11-13.)   He asserts that any pleading deficiency resulted from

his assumption that this case would be assigned to Judge Brieant, who was already familiar with

the relevant facts because he presided over *LeJeune*, and that he can amplify his allegations with

more specific facts and explain their relevance.  (*Id.* 11, 14.)

Although leave to amend should "freely be given when justice so requires," Fed. R. Civ.

P. 15(a), and is customarily given when a motion to dismiss is granted, *Bellikoff v. Eaton Vance

Corp.*, 481 F.3d 110, 118 (2d Cir. 2007), a motion to amend may be denied if there is "'[u]ndue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of

amendment.'"  *Dougherty*, 282 F.3d at 87 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here there have been repeated failures to cure; Defendants would be unduly prejudiced; and

amendment would be futile.  Plaintiff amended his complaint twice in *Iuliano*, once in *LeJeune*,

and once in the instant case.  A number of these complaints followed detailed guidance from

Magistrate Judges, District Judges and the Second Circuit, and yet they remained deficient.  An

eighth bite at the apple, coming nine years after *Iuliano* was filed and more than five years after

the First Amendment retaliation claim was first raised in *LeJeune*, is simply unwarranted.  The

chances that the eighth time will be the charm are slim; Defendants would be prejudiced in

having to defend against yet another amendment; and it is time to bring this litigation to a

conclusion.  The Court is not required to accept Plaintiff's representation that he could amplify

the Complaint when he has already attempted to do so several times without success.  S*ee

Funcia v. Nyse Group*, No. 07-CV-1745, 2007 U.S. Dist. LEXIS 88581, at *13-14 (S.D.N.Y.

Nov. 29, 2007) (*pro se* complaint dismissed where earlier case arising out of same facts had

already been litigated); *Ponder v. Goord*, No. 04-CV-0045, 2004 U.S. Dist. LEXIS 13750, at *7

(W.D.N.Y. May 22, 2004) (dismissing claims with prejudice where plaintiff "already had two

opportunities to plead his claims . . . and a third opportunity w[ould] not resuscitate" them).

Accordingly, Plaintiff's claims are dismissed with prejudice.

## III. Conclusion

It is hereby ORDERED that Magistrate Judge Yanthis' Report dated January 9, 2009 is

adopted as the decision of the Court to the extent that it is consistent with this Order.

Defendant's Motion to Dismiss is GRANTED. The Clerk of Court is respectfully directed to

terminate the pending motion (Doc. 19) and close the case.

## SO ORDERED.

Dated: March 25. 2009
       White Plains, New York

CATHY SEIBEL, U.S.D.J.

-27-